TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00815-CR






The State of Texas, Appellant



v.



Thomas Jarod Nash, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. 20,041-CR, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING







 We withdraw our original opinion and judgment issued July 27, 2000 and substitute
the following.

 After being stopped for a window tint violation, Thomas Jarod Nash was indicted
for possession of a controlled substance. See Tex. Health & Safety Code Ann. § 481.115(c) (West
Supp. 2000). Nash filed a motion to suppress the evidence obtained after the search of his vehicle
following the stop. The trial court granted the motion to suppress and the State appeals. See Tex.
Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2000). We reverse.

Factual Background


 On August 20, 1999, at approximately 10:30 p.m., Department of Public Safety
Troopers Morgan and Del Bosque stopped Nash because they believed his car window tint was
too dark. See Tex. Transp. Code Ann. § 547.613(a)(2) (West 1999). The troopers confirmed the
window tint violated section 547.613 by testing the windows with a tint meter. According to the
testimony, the tint on Nash's windows failed to comply with the statutory requirements. In
addition, they discovered that Nash was driving without a license and that his vehicle inspection
sticker had expired. Trooper Morgan recognized Nash's passenger, Omar Clark, whom he had
previously arrested for possession of a controlled substance. After a warrants check, the troopers
learned that Clark had outstanding warrants for his arrest in Dallas County.

 Almost immediately after the stop, Nash exited the vehicle and was patted down
by Trooper Morgan.(1) While Trooper Morgan talked with Nash, Trooper Bosque tested the tint
with the tint meter. Trooper Morgan asked if there were drugs in the car and asked for consent
to search the vehicle. Trooper Morgan testified that Nash consented to the search. Nash testified
that he did not remember if he consented. Upon searching Nash's vehicle, the troopers found
cocaine under the back seat and arrested Nash for possession. Nash moved for suppression of the
evidence obtained from the search. The trial court granted the motion, dismissed the case and
discharged Nash. The State did not request written findings of fact and conclusions of law. On
appeal, the State argues only that the search was valid based on consent.

Discussion


Standard of Review

 In reviewing a ruling on a motion to suppress, we are required to give almost total
deference to a trial court's determination of historical facts that the record supports, especially
when the trial court's fact findings are based on an evaluation of credibility and demeanor.
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); see also Carmouche v. State, 10
S.W.3d 323, 327 (Tex. Crim. App. 2000). With mixed questions of law and fact which turn an
evaluation of credibility and demeanor, we should also defer to the trial court's ruling. Guzman,
955 S.W.2d at 89. However, we review de novo the application of the law to the facts which do
not turn on questions of credibility and demeanor. Id.

 We set out in full the trial court's findings of fact and conclusions of law as orally
stated on the record: 


The Court finds that the night of August 20th, 1999 was a hot summer night in
Milam County, Texas.


The Court finds that the air conditioner in the Defendant's automobile was
inoperative.


The Court finds that the windows in the Defendant's automobile were at least half
way down prior to the stop, search and arrest in question.


The Court finds that the window tint on the windows of the Defendant's automobile
complied with applicable state law as evidenced by State Exhibit 1, a photograph
of the Defendant's car and the seal of compliance affixed to the Defendant's car
windows. That is additionally, buttressed by Trooper Chandler's testimony that
there was no obvious illegal window tinting on July 30th, 1999.


The Court finds that the arresting officer, Jimmy Morgan, had one prior arrest and
one prior unfruitful stop of Omar Clark, the passenger in the Defendant's
automobile. 


The Court finds that Trooper Jimmy Morgan recognized Omar Clark as a
passenger in the Defendant's automobile and confirmed his recognition by driving
up beside the Defendant's automobile on the highway and having a stoplight
focused on the Defendant Omar Clark. 


The Court finds that immediately after the identification of Omar Clark was
confirmed, Trooper Jimmy Morgan stopped the Defendant's automobile, searched
the Defendant, his automobile and his passenger.


The Court concludes as a matter of law that the stopping of the Defendant was a
pretexted stop. That the reason given for the stop, that is the illegal window tint,
was a subterfuge.


The Court finds there was no probable cause to stop the Defendant.


The Court finds that any consent given by the Defendant was a mere acquiescence
to authority, was not an informed consent.


Therefore, the Court rules that all evidence obtained from the unlawful stop and
subsequent search and arrest is inadmissible in evidence and the Motion to
Suppress is granted.

 

 According to the stated findings and conclusions, the trial court granted Nash's
motion to suppress because the initial stop was a "pretext" stop, and because the subsequent search
of Nash's vehicle was not based on voluntary consent, but rather was an acquiescence to a claim
of lawful authority. We begin with an analysis of the stop. 


Stop of Nash's Vehicle

 If an officer has reason to suspect that "criminal activity may be afoot," something
less than probable cause is needed for an investigatory stop. Terry v. Ohio, 392 U.S. 1, 30
(1968); McVickers v. State, 874 S.W.2d 662, 664 (Tex. Crim. App. 1993) (officer may lawfully
stop and detain a person for a traffic violation); see also Garcia v. State, 827 S.W.2d 937, 944
(Tex. Crim. App. 1992) (as long as an actual violation occurs, police are free to enforce laws and
detain a person for that violation, regardless of usual practices or subjective reasons); Howard v.
State, 888 S.W.2d 166, 172 (Tex. App.--Waco 1994, pet. ref'd) (stop is lawful if officer has
reasonable suspicion of a traffic violation either on the automobile or by one of the automobile's
occupants). "Something less than probable cause" is defined as reasonable suspicion. See Davis
v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997). Reasonable suspicion requires "that there
is something out of the ordinary occurring and some indication that the unusual activity is related
to crime." Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim. App. 1992) (citing Garza v. State, 771
S.W.2d 549, 558 (Tex. Crim. App. 1989)). The articulated facts that support a temporary
detention must be taken as a whole, and the reasonable suspicion formed based on the "totality of
the circumstances." Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); see also United
States v. Cortez, 449 U.S. 411, 417 (1981). If the officer develops a reasonable suspicion that the
motorist is engaged in, or soon will engage in criminal activity, he may continue to detain him for
investigation unrelated to the initial traffic stop. See Davis, 947 S.W.2d 245.

 Failure of window tint to meet certain light transmission and luminous reflectance is
a misdemeanor for which a violator may be arrested without a warrant. See Tex. Transp. Code
Ann. §§ 547.613(a), 543.001 (West 1999). It is well settled that a traffic violation committed in
an officer's presence authorizes an initial stop. Armitage v. State, 637 S.W.2d 936, 939 (Tex.
Crim. App. 1982); see also United States v. Castillo, 76 F.3d 1114, 1117 (10th Cir. 1996) (officer
stopped driver for window tint violation and subsequent consent search revealed controlled
substance). 

 Under Guzman, we must accord almost total deference to the following facts:
(1) Nash's car windows were tinted; (2) the windows contained a sticker indicating compliance
with state law; and (3) there was no obvious illegal window tint on July 30, 1999. We review de
novo the following legal determinations: (1) Nash's window tint complied with state law; (2) the
stop was a pretext stop; and (3) no probable cause existed to stop Nash. 


 1. Window Tint Complies with State Law

 The trial court concluded that Nash's window tint complied with state law. While
compliance with state law may be a relevant consideration, the central issue in this case is whether
the troopers had reasonable suspicion to stop Nash's vehicle. This question turns on what the
troopers knew at the time they decided to make the stop. Both Trooper Morgan and Trooper
Bosque testified that they observed Nash's car from across an intersection and suspected the
window tint was too dark. To confirm their suspicions, they pulled beside Nash's car and shined
a light into the windows, further confirming their suspicions that the tint was too dark. The
troopers then stopped the vehicle. 

 The trial court based its legal conclusion that the windows complied with state law
on the presence of a compliance sticker on the windows and the testimony of Trooper Chandler,
who had previously stopped Nash. In response to questioning, Trooper Chandler agreed that if
a car has an obviously illegal window tint he would issue a citation.(2) The State presented evidence
that compliance stickers on tinted windows are often unreliable. Moreover, even without such
evidence, the presence of a compliance sticker does not establish the legality of the tint. 
Accepting the trial court's historical fact findings, we conclude compliance with state law is not
supported by the record. Accordingly, we reject the trial court's conclusion that the tint complied
with state law. 


 2. Pretext Stop

 The trial court concluded that the troopers' stop of Nash was an invalid pretext stop. 
A pretextual seizure is one effectuated for an ulterior motive. Crittenden v. State, 899 S.W.2d
668, 671 (Tex. Crim. App. 1995). Under the objective approach towards claims of a pretextual
seizure, a seizing officer's subjective motivation in effectuating a seizure is deemed irrelevant to
the determination of whether the seizure was reasonable. Id. As pointed out by the court of
criminal appeals, this approach is "nothing more than the complete abandonment of any sort of
pretext doctrine." Id. An objectively valid traffic stop is not unlawful just because the detaining
officers had some ulterior motive for making it. Id. at 674. Because the officer's subjective intent
in effectuating the seizure is irrelevant, it did not constitute an illegal pretext. Id. at 671. 

 As set out above, the officers had an objective basis for making the stop. Any
subjective motivation for making the stop is not relevant. Accordingly, we reject the trial court's
conclusion of law that the stop was an illegal pretext stop. 


 3. Probable Cause to Stop 

 The trial court concluded that the troopers did not have probable cause to stop Nash. 
Reasonable suspicion, not probable cause, is required for a traffic stop. See McVickers, 874
S.W.2d at 664. Accepting the trial court's findings as true, they do not lead to the conclusion that
as a matter of law the troopers did not have reasonable suspicion to stop Nash's vehicle on the
night of August 20, 1999, for a possible window tint violation. Troopers Morgan and Bosque
testified that, based upon their observations, the window tint looked too dark. The trial court
findings do not rebut their testimony. The trial court's findings are matters which were not known
to Troopers Morgan and Bosque at the time of the stop. Accordingly, we conclude that the
troopers had reasonable suspicion to stop Nash. We must now determine whether the troopers'
warrantless search violated Nash's Fourth Amendment rights.


Search of Nash's Vehicle

 The trial court concluded that Nash did not voluntarily consent to the search but
rather reacted to a show of authority. The State argues only that the search was valid based on
Nash's consent to search. Our review then is limited to determining if the State's search of Nash's
vehicle was a permissible, consensual search. See State v. Aguirre, 5 S.W.3d. 911, 913-14 (Tex.
App.--Houston [14th Dist.] 1999, no pet.).

 Consent to search is one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause. Carmouche, 10 S.W.3d at 331 (citing
Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). Consent to search satisfies the Fourth
Amendment if the consent is voluntary. Carmouche, 10 S.W.3d at 331 (citing Ohio v. Robinette,
519 U.S. 33, 40 (1996)). The consent must not be coerced, by explicit or implicit means, by
implied threat or covert force. Carmouche, 10 S.W.3d at 331 (citing Schneckloth, 412 U.S. at
228)). The consent must be positive and unequivocal. Allridge v. State, 850 S.W.2d 471, 493
(Tex. Crim. App. 1991). Consent is not established by "showing no more than acquiescence to
a claim of lawful authority." Carmouche, 10 S.W.3d at 331 (citing Bumper v. North Carolina,
391 U.S. 543, 548-49 (1968)). The State must show by clear and convincing evidence that the
consent was freely given. Carmouche, 10 S.W.3d at 331. Whether consent is voluntary is a
question of fact to be determined from the totality of the circumstances. Schneckloth, 412 U.S.
at 227.

 According to Nash's testimony, he was uncertain whether he gave consent for the
search. Trooper Morgan testified that Nash consented to the search. While we are generally
bound by the trial court' s historical factual determinations, especially those based on credibility
and demeanor, we are not so bound with the presence of a videotape. See Carmouche, 10 S.W.3d
at 332. The videotape shows that once Trooper Morgan stopped Nash, Nash stepped out of the
car and Morgan frisked him. Within minutes after Trooper Morgan stopped Nash, Trooper
Morgan asked Nash if he could search the car. Nash responded: "Yes, sir." The videotape
presents indisputable visual evidence supporting Trooper Morgan's testimony, contradicting
Nash's equivocal testimony and the trial court's ruling. We cannot ignore the videotape evidence
simply because Nash's testimony may, by itself, be read to support the trial court's ruling. See
Carmouche, 10 S.W.3d at 332.

 Trooper Morgan's request to search the vehicle came within the first few minutes of
the stop. The troopers showed no display of force and did not coerce Nash into complying with
the request. Carmouche, 10 S.W.3d 332-33 (consent given by defendant while surrounded by four
officers with his back to a car is not voluntary); see also LaDuke v. Nelson, 762 F.2d 1318, 1329-30 (9th Cir. 1985) (consent by Hispanic farm workers was mere acquiescence to lawful authority
where search was accompanied by substantial show of force). Only Trooper Morgan had contact
with Nash when asking for consent to search the car. Trooper Bosque was testing the window tint
when Morgan asked Nash for consent to search. The troopers did not represent that they had a
search warrant. See Bumper, 391 U.S. at 548-49. Nash responded immediately, positively and
unequivocally to the request. See Allridge, 850 S.W.2d at 493. Viewing the totality of the
circumstances, we conclude that the State satisfied its burden of showing by clear and convincing
evidence that Nash voluntarily consented to the search of his vehicle.


Conclusion


 We conclude that the initial stop of Nash's vehicle was based on reasonable suspicion
and was a valid stop. The subsequent search of Nash's vehicle was a permissible search pursuant
to Nash's voluntary consent. Accordingly, we sustain the State's issue on appeal, reverse the trial
court's ruling on the motion to suppress and its dismissal of the case, and remand the cause to the
trial court. We overrule Nash's motion for rehearing. 



 

 Jan P. Patterson, Justice

Before Justices Jones, Yeakel and Patterson

Reversed and Remanded 

Filed: September 14, 2000

Do Not Publish


1. The stop and search of Nash, his passenger and his vehicle were captured on videotape
which the State introduced at the suppression hearing and which we have reviewed on appeal.
2. Trooper Chandler also testified that he did not "know if the car had tint on it that night," that
he did not remember anything about the windows on Nash's car, and that he did not remember
observing a window tint violation. 


n
Nash's consent to search. Our review then is limited to determining if the State's search of Nash's
vehicle was a permissible, consensual search. See State v. Aguirre, 5 S.W.3d. 911, 913-14 (Tex.
App.--Houston [14th Dist.] 1999, no pet.).

 Consent to search is one of the well-established exceptions to the constitutional
requirements of both a warrant and probable cause. Carmouche, 10 S.W.3d at 331 (